# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|                                    |   |                |
|------------------------------------|---|----------------|
| DONALD AND CARON KIPP,             | ) |                |
|                        Plaintiffs, | ) | **CIVIL ACTION** |
| v.                                 | ) | No. 09-1293    |
| DAVID M. MYERS and STACIE BRITON MYERS, | ) |           |
|                        Defendants. | ) |                |

## MEMORANDUM AND ORDER

Before the court is the Myers' motion for summary judgment. (Doc. 22). The matter has been fully briefed and is ripe for decision. (Docs. 23, 26, 27). The Kipps bring claims for breach of contract, negligent misrepresentation, fraud by silence, fraudulent misrepresentation, and rescission for mistake of fact. For the reasons set forth below, the Myers' motion is denied.

## I.   FACTS

The following facts are either stipulated to in the parties' pretrial order (Doc. 20) or mostly uncontroverted in their briefs. The court will consider any controverted facts in light most favorable, along with all favorable inferences, to the Kipps. See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)). To the extent relevant, any factual disagreements between the parties will be noted.

The Kipps are husband and wife who moved to Gypsum, Kansas from Arizona. Donald Kipp is a contractor and Caron Kipp is an experienced

real estate agent.

The Myers are husband and wife who lived on a 20-acre farm located at 8240 E. K-4 Highway, Gypsum, Kansas. The Myers owned the property from April 2000 until early January 2005. The Myers purchased the property from George Frisbie who owned the property for several years.

The house and several out buildings are located on the far western edge of the property. There is a flood gate located approximately 10 to 15 feet from the northeast corner of the property, which is used by the City of Gypsum ("the City") to stop water from flowing into the City. The City controls when the flood gate is opened and closed. When the City closes the flood gate during a heavy rain, water backs up onto the property. Kansas Department of Transportation {"KDOT") sends crews out to warn traffic when the water rises and there is a risk that it will cross K-4 Highway. KDOT records indicate that there were five occurrences during the five-year period that the Myers owned the property in which crews were sent to warn traffic of high water on K-4 Highway. There is a dispute regarding whether the Kipps were aware of the flood gate prior to purchasing the property.

In July 2005, the Myers listed their house and property for sale. The Kipps saw the listing and the parties had several telephone conversations about the property in October and November 2005. Sometime in November, Mrs. Kipp made a trip to visit the property. During her visit, Mesdames Kipp and Myers mostly discussed the house and the barn. Mrs. Kipp observed large trees lining one side of the property and asked whether there was a creek or river. Ms. Myers

replied "that there was a ditch that 'was dry most of the time' and that the [p]roperty had occasional 'ponding' in that portion of the far eastern pasture." Mrs. Kipp "understood that Mrs. Myers was telling her that there would be puddles of water in the pasture right at the fence line on the east side of the [p]roperty." (Doc. 26 at 8). Mrs. Kipp explained that she wanted to have horses on the property and was hoping to establish a business boarding horses. Other than the comment about ponding, the Myers said nothing about flooding or that KDOT had closed K-4 Highway five times during their ownership of the property.

On December 13, 2005, the Kipps were faxed the Myers' disclosure form. Mr. Kipp either did not read or does not remember reading the disclosure form. Mrs. Kipp does not remember reading the disclosure form, but hopes she would have. The Kipps signed the Buyers' Acknowledgment section on the disclosure form on December 15, 2005.

After receiving the disclosure form, the Kipps requested that their real estate agent, Steve Thompson, check if the property was in a flood plain. The Kipps also made the real estate agreement contingent on the property not being in a flood plain because they could not get flood insurance. Both the title company and the Kipps' insurance company reported that the property was not in a flood plain.

On January 11, 2006, the parties closed on the property for the purchase price of $233,000. The Kipps soon began remodeling the residence as well as making the property suitable for boarding horses. The renovations and improvements cost approximately $200,000.

On April 26 2009, a storm producing about four inches of rain came through the Gypsum area. The city closed the flood gate which

in turn caused water to accumulate near and on the property. At its worst, approximately 18 acres of the property were under water excluding the residence. As a result of the flooding, the Kipps suffered extensive damage to their land, out-buildings, and basement, which resulted in approximately $3,900 in clean-up costs. The Kipps also permanently lost clients who had boarded their horses during the flood and word about the flood spread, which reduced the number of inquiries on boarding horses.

Soon after the April flood, Frisbie approached the Kipps and handed them a compilation of documents that he had kept regarding the property and other surrounding properties. The documents portrayed a history of the flooding on the property and efforts by several landowners to alleviate the flooding in the area. The Kipps learned that Mr. Myers was involved in a project called the "hillside drainage project," which was created to try and solve the flooding of area properties when the flood gate was closed. The Kipps also discovered that the Myers' grass was damaged as a result of some of these floods. Based upon Frisbie's documentation, the Kipps believe that the Myers were well aware that their property floods, had suffered damages as a result of the flood, and made material omissions when they failed to mention the flooding and misrepresented the flooding as ponding.

## II. SUMMARY JUDGMENT STANDARD

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is

-4-

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III. ANALYSIS**

A court sitting in diversity will apply the forum state's substantive and choice of law provisions. Larson v. Chase Manhattan Mortg. Corp., No. 05-1005 WEB, 2006 WL 2375610, at *4 (D. Kan. Aug. 15, 2006). "Kansas uses the rule lex loci rei sitae which provides for the use of local law to determine the rights and obligations of the parties to real property." Id. Thus, the court will apply Kansas law.

**1. Statute of Limitations**

The Myers contend that the Kipps' claims are barred by the two-year statute of limitations applicable to tort claims. According to the Myers, the Kipps' claim that the Myers failed to disclose problems with flooding in the disclosures as opposed to the agreement. The Myers argue that the Kipps' breach of contract claim alleges a

-5-

violation of the legal duty to disclose, which differs from a contractual duty owed under the terms of the agreement.

The Kipps respond that the statute of limitations did not run because the first time they were aware of flooding on the property was April 2009. The Kipps claim that they did not experience flooding or witness any flood damage on May 24, 2007. Additionally, the Kipps state that they were not home May 24 and do not believe KDOT issued warnings for high flood waters.

Making all findings of fact and inferences in favor of the Kipps, the court finds that there is sufficient evidence to support the Kipps' claim that they were unaware of any flooding on the property prior to April 2009. A material question of fact exists as to the Kipps' knowledge of flooding and the Myers' motion for summary judgment on the statute of limitations issue is denied.

**2. Fraud by Silence**

"[T]he existence of fraud is normally a question of fact." Brennan v. Kunzle, 37 Kan. App. 2d 365, 378, 154 P.3d 1094, 1104 (Kan. Ct. App. 2007). While the Kipps must prove the existence of fraud by clear and convincing evidence, that is not the standard for opposing a motion for summary judgment. Id.

To establish fraudulent nondisclosure or fraud by silence, the Kipps must show the following elements: (1) the Myers had knowledge of material facts which the Kipps did not have and which they could not have discovered by the exercise of reasonable diligence; (2) the Myers were under an obligation to communicate the material facts to the Kipps; (3) the Myers intentionally failed to communicate the material facts to the Kipps; (4) the Kipps justifiably relied on the

seller to communicate the material facts; and (5) the Kipps sustained damages as a result of the Myers' failure to communicate the material facts. Id. at 1105.

> When a [seller] has knowledge of a defect in property which is not within the fair and reasonable reach of the [buyer] and which he could not discover by the exercise of reasonable diligence, the silence and failure of the [seller] to disclose the defect in the property constitute actionable fraudulent concealment.

Larson v. Safeguard Properties, Inc., 379 F. Supp. 2d 1149, 1154 (D. Kan. 2005) (quoting Green v. Geer, 720 P.2d 656, 659, 239 Kan. 305, 309 (1986)).

The court finds that the facts in this case are similar to those in Brennan. 154 P.3d 1094. The buyers in Brennan experienced water leakage after purchasing the house. The sellers disclosed that water had leaked through four windows, which they had repaired. The buyers hired inspectors and had a contractor walk through the house. During the inspections, several repairs were determined to be necessary. The sellers repaired some of the defects and the buyers negotiated down the purchase price on others. However, at no time was the cause and extent of the water leakage discovered during the inspections.

Subsequent to the closing and water leak, it came to light that the sellers in Brennan had a report from an inspector, which indicated "that the real source of the water leaks could not be pinpointed without conducting additional destructive testing." 154 P.3d at 1106. The buyers argued that the sellers knew of this report and should have shared it with them so as to put them on notice that more extensive inspections were necessary. The Kansas Court of Appeals determined that the sellers had superior knowledge of the defect and a material

question of fact existed as to whether the inspections done by buyers were reasonable. Id. at 1109.

In this case, the Myers disclosed that there had not been any damage to the property because of flood and made no disclosures regarding problems with flooding or being in a flood plain. There is evidence that the Myers were aware of flooding on the property and had suffered damage to their grass. The Myers also had in their possession documents and/or knew that Frisbie maintained documentation regarding flooding on the property. In Mrs. Myers' deposition, she testified that she told Mr. Kipp that Frisbie was the previous landowner and that he had documentation about the property. (Doc. 26-8 at 4). However, Mrs. Myers did not mention specifically Frisbie's documentation on the flooding on the property. In fact, she told Mr. Kipp to contact Frisbie after the Kipps purchased the property. Instead of giving the Kipps the documents relevant to the property and flooding prior to closing, the Myers gave them back to Frisbie. A reasonable jury could find that the Myers were aware of the flooding and had documentation on this fact, but attempted to "hide the ball" by giving the documents back to Frisbie and instructing the Kipps to contact him if they purchased the property.

Another similarity between this case and Brennan is that the Kipps independently investigated whether the property was in a flood plain. Both the title company and the Kipps' insurance company reported that the property was not in a flood plain. The Kipps did not realize prior to purchasing the property that land in Kansas can still flood even if it is not in a flood plain.

The court finds that a material question of fact exists as to

whether the Kipps' independent investigations were reasonable to discover that the property floods. There is no evidence that the Kipps witnessed heavy rains on the property during their visits. It follows that a material question of fact exists as to whether the Myers had an obligation to disclose the flooding. If the Kipps could not have discovered the flooding issue with reasonable investigations, then the Myers had a duty to disclose the flooding. The question of whether disclosure of ponding was sufficient is also a question of fact.

On the issue of intent, the Kipps have introduced sufficient evidence that the Myers intentionally kept the history and extent of flooding on the property a secret. The Myers could have been up front with the Kipps regarding the flooding, but instead directed them to talk to Frisbie if and after they purchased the property. Instead of handing over the documents to the Kipps, the Myers gave them back to Frisbie. The Myers were aware that the Kipps did not want to purchase property located in a flood plain because they could not get flood insurance and the contract was contingent on this fact. Therefore, a reasonable jury could find that the Myers intentionally failed to communicate the flooding to the Kipps.

As to the fourth and fifth elements, the Myers do not dispute that the Kipps suffered damages as a result of the flood. However, the Myers dispute that the Kipps justifiably relied on their representations. The Myers made no representations regarding problems with flooding other than they suffered no damage from flood. The Kipps respond that they relied both on the Myers' silence regarding flooding and their own investigations as to whether the property was

in a flood plain.  Because nothing was communicated or found to put the Kipps on notice of flooding, they believed it was not a risk.

The Kipps further argue that their experience as a contractor and real estate agent in Arizona differs from the experience Kansas real estate agents and contractors would have.  The Kipps contend that selling homes in Arizona differs from that of Kansas because flooding is not a significant issue in Arizona.  Mrs. Kipp did not have experience in inspections for flooding.  The court has serious doubts about whether a jury will accept the Kipps' alleged lack of experience in Kansas, but that is not a matter for summary judgment.

The Kipps have presented sufficient evidence such that a reasonable fact finder could determine that they justifiably relied on the Myers' silence on the flooding issue.  The Myers were aware that the Kipps did not want to purchase property in a flood plain and could not get flood insurance and yet remained silent.  Because the Kipps have presented sufficient evidence on all five elements, the Myers' motion for summary judgment on the Kipps' fraud by silence claim is denied.

### 3.    Fraudulent Misrepresentation

The elements of a claim for fraudulent misrepresentation "include an untrue statement of fact known to be untrue by the party making it made with the intent to deceive or with reckless disregard for the truth upon which another party justifiably relies and acts to his or her detriment."  Alires v. McGehee, 277 Kan. 398, 403, 85 P.3d 1191, 1195 (2004).  Actual knowledge of the fact making the statement untrue is required to prove a claim for fraud.  Id. at 1197.

The Kipps contend that the Myers' disclosures were

-10-

misrepresentations. The Myers' disclosure form was integrated into the real estate contract. See Alires, 85 P.3d at 1196. The Myers represented that they had suffered no damage to the property as a result of flood and that they were unaware "of any other facts, conditions or circumstances that would affect the value, beneficial use or desirability of [the] property." (Doc. 26-6 at 7). The Myers made no other disclosures relating to flooding.

The Kipps signed the buyer acknowledgment section and agreed to verify the above information with independent investigations of their own. Additionally, the Kipps acknowledged that they were not relying on any important representations concerning the condition of the property except as disclosed above in the disclosure form or as set forth in writing. The Kipps wrote no representations that they were relying on in the write-in space provided on the disclosure form.

The court focuses on the "except as disclosed above" language in the disclosure form. While it is true that the Kipps did not specifically write any representations that they were relying on, that was not necessary because it was already disclosed. See Alires, 85 P.3d at 1196 (stating that there was no need for the buyers to write in the representation because it was already listed in the disclosure form itself). Because the Myers' disclosure form contained the "except as disclosed above" language in the write-in section, the Kipps did not need to re-write any representations they were relying on if disclosed above. Id.; McLellan v. Raines, 36 Kan. App. 2d 1, 12, 140 P.3d 1034, 1042 (Kan. Ct. App. 2006).

The Kipps point to the documents provided by Frisbie as evidence that the Myers had suffered damage from flood on their property and

-11-

were aware of the fact that flooding might affect the value and beneficial use of the property. On March 26, 2001, a letter regarding the Hillside Drainage Project was written to the Gypsum mayor and city council stating flooding on the Agin (now David Meyer) property has "caused excessive damage to downstream land and usually kills the grass on the Agin land." (Doc. 26-15 at 6). Six copies were given to Mr. Myers for distribution. On September 23, 2003, Steve Vernon from the office of the city clerk for the City wrote Mr. Myers a letter suggesting a solution to reduce the amount of time that flood water was on the property. (Doc. 26-15 at 2).

The court finds that there is sufficient evidence for a reasonable jury to determine that the Myers had actual knowledge of the flooding problem and damage to their grass. Likewise, a reasonable jury could then conclude that the Myers misrepresented their answers in the disclosure form. The issue of the Myers' intent is a material question of fact that will be left to the jury to decide. See Alires, 85 P.3d at 1196 (stating that the question of intent to deceive was not one for determination by the court of appeals).

The court has already concluded that the Kipps did not waive any representations made by the Myers in the disclosure form by not writing anything in the write-in section. Therefore, a reasonable jury could find that the Kipps were justified in relying on the Myers' disclosure form, which was integrated into the real estate contract. The Myers' motion for summary judgment on the Kipps' fraudulent misrepresentation claim is denied.

### 4. Negligent Representation

The main difference between claims of fraudulent and negligent misrepresentation "is that fraudulent misrepresentation requires proof that [the Myers] knew the statement was untrue or was reckless as to the truth or falsity of the statement, while negligent misrepresentation requires proof that [the Myers] failed to exercise reasonable care or competence to obtain or communicate true information." Brennan, 154 P.3d at 1110. The parties have stipulated that the Myers had a pecuniary interest in the sale of the property. (Doc. 20 at 8).

The court has already found that the Kipps have presented sufficient evidence such that a reasonable jury could find that the Myers knowingly or recklessly made fraudulent misrepresentations. Therefore, there is sufficient evidence that a reasonable jury could find that the Myers failed to exercise reasonable care or competence to communicate true information on the disclosure form. The Myers' motion for summary judgment on the Kipps' negligent representation claim is denied.

### 5. Breach of Contract

To prove their breach of contract claim, the Kipps must show: "1) the existence of a contract between the parties; 2) consideration; 3) the plaintiff's performance or willingness to perform in compliance with the contract; 4) defendant's breach of the contract; and 5) that plaintiff was damaged by the breach." The Bradbury Co., Inc. v. Teissier-duCros, 387 F. Supp. 2d 1167, 1171 (D. Kan. 2005). The parties have stipulated the first and second elements. (Doc. 20 at 7).

A seller's disclosure statement is typically integrated into the real estate agreement between a buyer and a seller for real property. Alires, 85 P.3d at 1196. Under Kansas law, a buyer has an affirmative duty to set forth in writing any representations they are relying on in the disclosure statement unless specific language provides for reliance on disclosures made by the seller. Katzenmeier v. Oppenlander, 39 Kan. App. 2d 259, 262, 178 P.3d 66, 69 (Kan. Ct. App. 2008) (citing McLellan v. Raines, 36 Kan. App. 2d 1, 140 P.3d 1034 (Kan. Ct. App. 2006)). Otherwise, it will be treated as if the buyer waived any representations and/or agreed not to rely on them. Id.

The third and fifth elements are not really in dispute, The Kipps performed in compliance with the real estate contract by purchasing the property for the agreed upon amount of $233,000. Nothing more was required by the Kipps under the contract. The Kipps also suffered damages as a result of the April 2009 flood.

The fourth element is disputed by the parties. The parties' real estate contract contained the following language:

41. The Agreement provides in Paragraph 11 "Inspections":

Buyer shall be responsible for inspections and shall have access to the premises until WITHIN TEN BUSINESS DAYS AFTER ACCEPTANCE to inspect the premises or have the premises inspected by qualified persons at Buyers's expense, to determine: (1) the presence of Radon gas, asbestos, formaldehyde foam insulation, lead-based paint or any other environmental or health hazard; (2) the presence of termite infestation in the dwelling or the garage....(3) the structural integrity and durability of the roof and foundation; and (4) whether defects exist in the functional operation of plumbing, heating and air conditioning systems, electrical systems, mechanical systems and attached appliances. Functional operation is the system's ability to operate in accordance with its age and its original intended use and does not imply that the system meets current design criteria, or building codes....

Buyer shall, within two (2) business days following the end
of the period for such inspection, provide Seller with
notice, in writing, of any deficiencies. If Buyer fails to
provide such written notice, or waives such inspection in
writing, it shall be conclusively presumed that the
premises are acceptable. In the event written notice is
given, Buyer and Seller shall agree in writing within
forty-eight (48) hours from the date and time of such
written notice, on the manner in which any deficiencies are
to be corrected or either party may elect to cancel this
Contract and all moneys paid hereunder on the purchase p
rice shall be refunded to Buyer and thereupon all parties
shall be released from any further liability...

42. The Agreement provides in Paragraph 12,
"Representations and Disclaimers":

....The parties agree that no representations have been
made with respect to changes in property valuation, changes
in taxes and assessments, environmental problems, school
district and applicable school attendance centers, federal,
state or local regulations with respect to floodways,
floodway fringes and flood plain, increase in insurance
premiums, or other similar matters, about which Buyers
should make an independent investigation. Premises
inspected by qualified persons at Buyer's
expense to determine.

(Doc. 23 at 6-7). The Myers claim that they did not breach the real

estate contract because the Disclosure statement contains the

following language:

THIS STATEMENT IS A DISCLOSURE OF THE CONDITION OF THE
ABOVE DESCRIBED PROPERTY KNOWN BY THE SELLER ON THE DATE
WHICH IT IS SIGNED. IT IS NOT A WARRANTY OF ANY KIND BY THE
SELLER(S) OR ANY REAL ESTATE LICENSEE IN THIS TRANSACTION,
AND SHOULD NOT BE ACCEPTED AS A SUBSTITUTE FOR ANY
INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. THE
INFORMATION PROVIDED IN THIS STATEMENT IS THE
REPRESENTATION OF THE SELLER AND NOT THE REPRESENTATION OF
ANY REAL ESTATE LICENSEE.

    1. I acknowledge that I have read and received a
signed copy of the Seller's Property Disclosure Statement
from the Seller, the Seller's agent, or transaction broker.
    2. I agree to verify any of the above information that
is important to me by an independent investigation of my
own. I have been advised to have the property examined by
professional inspectors.
    3. I acknowledge that neither Seller nor any real
estate licensee involved in this transaction is an expert

-15-

>    at detecting or repairing physical defects in the property.
>    I state that no important representations concerning the
>    condition of the property are being relied upon by me
>    except as disclosed above or as fully set forth as
>    follows....

(Doc. 23 at 6-7).

The Kipps do not claim that the Myers breached any specific provision of the real estate contract. On the other hand, the Kipps claim that the Myers' disclosure statement contained misleading representations and material omissions regarding flooding.

The court has already determined that the "except as disclosed above" language prevented any waiver to the representations made by the Myers in the disclosure form. Likewise, there is sufficient evidence that a reasonable jury could find that the Kipps made reasonable investigations to determine whether the property had problems with flooding. While the parties' contract did not grant any warranties pursuant to the Myers' representations, there is evidence that a reasonable jury could find the existence of fraud. "'[C]ompetent parties may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound.'" <u>Alires</u>, 85 P.3d at 1198 (quoting <u>Hamtil v. J.C. Nichols Real Estate</u>, 22 Kan. App. 2d 809, 812, 923 P.2d 513, 517 (Kan. Ct. App. 1996)). There is sufficient evidence that the Myers made fraudulent misrepresentations in their disclosures, which the Kipps relied upon. The Myers' motion for summary judgment on the Kipps' breach of contract claim is denied.

### 6. Rescission

"Rescission is an equitable remedy designed to afford relief from contracts entered into through mistake, fraud, or duress." Garrison v. Berryman, 225 Kan. 644, 646, 594 P.2d 159, 161 (1979). The result is to put the contracting parties in their original positions prior to entering into the contract. Id.

The Kipps claim that they mistakenly believed that the property did not have problems with flooding and that the Myers were aware of the Kipps' mistaken belief. "It has long been the law that a written instrument may be reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him." Andres v. Claassen, 238 Kan. 732, 740, 714 P.2d 963, 969 (1986). A party's unilateral mistake coupled with the other party's fraud and knowledge of the mistake is grounds for rescission. Id.; Corcoran v. Supertel Hospitality Management, Inc., 159 F. Supp. 2d 1321, 1327-28 (D. Kan. 2001).

The court finds that the Kipps have presented sufficient evidence that they mistakenly believed the property did not have problems with flooding. There is also sufficient evidence that the Myers knew the property flooded and were aware of the Kipps' desire to purchase property that did not have problems with flooding. Furthermore, a reasonable jury could find substantial injustice if the real estate contract was enforced. Therefore, the Myers' motion for summary judgment on the Kipps' rescission claim is denied.

The court has found that material facts exist and that a

reasonable jury could find in favor for the Kipps on each claim.  The Myers are not entitled to summary judgment.  Nevertheless, counsel are expected to make their clients aware that a ruling on a motion for summary judgment must not be taken as some sort of prediction by the judge regarding the outcome of a case before a jury.  The outcome of this type of case depends to a considerable extent on the jury's view of the credibility of the parties and witnesses, something which this court cannot judge at the summary judgment stage.

**IV. CONCLUSION**

For the reasons stated more fully herein, the Myers' motion for summary judgment (Doc. 22) is denied.  The clerk shall set this case for a status conference and for trial.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau

v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   12th   day of November 2010, at Wichita, Kansas.

>                             s/ Monti Belot
>                             Monti L. Belot
>                             UNITED STATES DISTRICT JUDGE